SCHEDLBAUER *v.* CHRIS-CRAFT CORPORATION.

1. NEGLIGENCE—PROXIMATE CAUSE—EVIDENCE—CONJECTURE.

Plaintiff need not prove the causal connection between defendant's claimed negligence and plaintiff's injury by direct evidence, but substantial evidence must be furnished to serve as a reasonable basis for inference of the causal connection, and the proofs must establish such connection beyond the point of conjecture as more than a possibility.

2. SAME—PROXIMATE CAUSE—EVIDENCE—JUDGMENT NOTWITHSTANDING THE VERDICT.

Judgment for defendant notwithstanding the verdict for plaintiffs *held,* properly granted in negligence actions by plaintiffs against manufacturer of boat, arising out of explosion and fire aboard boat, alleged to have been caused by defective fuel pump furnished on boat engine by defendant, where no evidence was submitted that fuel pump was defective, and expert witnesses called by both sides testified that a defective fuel pump was only one of several possible causes of such explosion and fire, some of which causes did not necessarily arise out of defendant's negligence.

Appeal from Macomb; Spier (James E.), J. Submitted Division 2 October 4, 1966, at Lansing. (Docket Nos. 486, 487.) Decided February 14, 1967. Leave to appeal granted May 4, 1967. See 379 Mich 761.

Declaration by Wilma Schedlbauer against Chris-Craft Corporation, a Michigan corporation, for personal injuries received in an explosion and fire on a boat. Declaration by Stephen Schedlbauer and

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 38 Am Jur, Negligence § 334.

State Cyclone Mutual Insurance Company, a Michigan corporation, and American States Insurance Company, an Indiana corporation, his subrogees, for loss of boat and personal property and medical expenses in the same accident. Verdicts for plaintiffs. Judgment notwithstanding verdict entered for defendant in each case. Plaintiffs appeal. Affirmed.

*Ralph H. Adams,* for plaintiffs.

*Allen, Allen & Shell,* for defendant.

McGregor, J. These cases were initiated following an incident in which an inboard pleasure boat exploded, burned, and sank. The boat had been in use for approximately 2 years and was owned by a second owner. Evidence indicated the explosion could have been caused by a defective fuel pump, the leaking of gasoline into the bilge, a stuck carburetor, dirt in the carburetor, loose fittings, or a broken fuel line. A jury verdict awarded damages against the manufacturer based on a holding of a latent defect in the manufacture of the fuel pump of the boat. The question is whether that verdict should stand. The trial court thought not and in both cases entered a judgment notwithstanding the verdict on the grounds of no cause of action.

The boat sank in 60 feet of water and has not been seen since. Testimony showed that raw gasoline would be admitted into the bilge area through breather holes in the fuel pump, in the event of a malfunction of the fuel pump, or in the event the diaphragm of the fuel pump became pitted. Raw gasoline in the bilge area was probably the cause of the explosion and it well could have set up the condition resulting in the explosion.

Appellant purchased a 27-foot Chris-Craft inboard boat from the original owner in May, 1962. The boat had been purchased new from the Chris-Craft corporation in the early spring of 1960. No alterations were performed on the boat after it was acquired from Chris-Craft and before the appellants purchased it. Schedlbauer had previously owned four other inboard-type boats and evidence showed he was experienced in the operation of inboard boats. Schedlbauer installed a bilge pump and bilge blower in the boat but made no changes whatsoever in regard to the engine or the fuel system of the boat.

Stephen and Wilma Schedlbauer left St. Clair Shores, Michigan, for a vacation with the boat to Manitoulin Island, in Canada, where they arrived July 10, 1962, having made several stops en route. On the morning of July 12, 1962, the Schedlbauers departed from the lodge. The hatch covers of the boat were left open for approximately one hour before starting the engine. During this hour, Schedlbauer stowed fishing gear and other assorted items into the boat. He then turned on the blower motor for approximately 5 minutes before starting the engine, and permitted the engine to run for about 5 minutes before pulling out into the bay. After pulling out into the bay, Schedlbauer put the boat into neutral and waited for some companion boats to join him for the trip back. At this time, appellant noticed the motor did not sound right and smelled the odor of gasoline. He turned toward the rear of the boat, intending to go back and turn off the engine, and had taken a couple of steps when the explosion occurred, resulting in injury to his wife, Wilma Schedlbauer, one of the appellants herein.

Appellant did not check the fuel pump prior to the accident. Appellant's expert witness, Mr. Barr,

testified that in his opinion a defective diaphragm in the fuel pump was the only possible explanation of the explosion. He explained tests that he had conducted which, in his mind, ruled out the possibility that a broken fuel line had caused the explosion. On cross-examination, appellant's expert witness testified he could not say exactly what made the boat explode. He admitted that other things could have gone wrong, and that the explosion could have been caused by: (1) a defective diaphragm, (2) mechanical difficulties in the carburetor, or (3) a leak in the gasoline tank located in the bilge area.

Mr. Jasper, one of the appellee's expert witnesses and chief engineer for the defendant corporation testified that he is chairman of the subcommittee of fuel line and fuel fittings, which is composed of the members of the Society of Automotive Engineers and the American Boat and Yacht Council, of both of which he is a member. He testified that an engine running rough and gasoline leaking into the bilge could be due to slight flooding caused by the carburetor float valve being stuck or not functioning properly. Further, he testified that if dirt got into the carburetor, the carburetor would flood and gasoline would pass into the manifold and into the bilge. Mr. Jasper also testified that fuel pumps were attached by a copper tubing to the fuel tank, which attachment is by a nut which must be tight, and that if this nut should become loose, gasoline would be pumped into the bilge, but that the engine would run, however roughly, if the leak weren't too bad. The court asked Mr. Jasper what was most likely to have caused the leak and he replied that he did not have a specific opinion as to the cause. Mr. Jasper also testified that there are recommendations for modifying the venting of the fuel pump in question, but nothing definite has been determined,

Appellee called as another expert witness Mr. Jordan Elder, who is a staff engineer for AC Spark Plug Division of General Motors, and has worked with fuel pumps. He explained the parts of a fuel pump: the diaphragm in a fuel pump is composed of reinforced fabric with a special coating to promote flexibility and prevent leaking. He explained that in the operation of a fuel pump, the diaphragm pulsates or oscillates, bringing the gasoline from the tank and pumping it into the carburetor. Mr. Elder further testified that a gasoline leak could come from a split fuel line, a loose fitting, or a flooding condition, due to dirty fuel. On cross-examination, Mr. Elder stated that the diaphragm could rupture completely, but that if there were small holes in the diaphragm, fuel would continue to be pumped and fuel would not come out the breather holes of the fuel pump into the bilge area.

Appellants allege that the fuel pump diaphragm constituted a latent defect. They allege that appellee failed to provide notice or warning, either by way of literature or on the boat itself, to the general public concerning any hazard involved in the use of the fuel pump. Further, they allege that the appellee had prior knowledge and notice of the highly dangerous, hazardous and explosive condition which existed in the event the diaphragm became damaged or operated defectively. Appellants further allege that the appellee failed to correct such latent and dangerous conditions.

Before 1960, appellee had marketed thousands of boats of the same type, and the said boats had installed on them similar fuel pumps, manufactured by the AC Spark Plug Division. Appellant's evidence showed that if the diaphragm contained in the fuel pump were defective, raw gasoline would be admitted directly through the breather holes into the bilge area. At the date of trial, in August,

.1964, the appellees were still installing the same model fuel pumps as the one in question. The testimony shows that there is legitimate disagreement as to whether the design of the fuel pump should be modified because of improper venting.

The question is whether or not the appellants did establish, by evidence, the source of the leaking gasoline. There is no evidence that the diaphragm was defective. All the experts called by both parties listed it as one of the possibilities, however, there is no proof in the record of the diaphragm being defective.

Mr. Justice Talbot Smith quoted ample authority for the proposition that a jury verdict must be based on more than mere conjecture, in *Glinski* v. *Szylling* (1959), 358 Mich 182, 202:

. "No less explicit was the opinion of Mr. Justice Wiest in *Frye* v. *City of Detroit,* 256 Mich 466, 469, 470, in holding as ·follows:

" 'It was necessary for plaintiff to submit proof, from which the jury could draw the reasonable inference that the death of plaintiff's decedent would not have occurred but for the negligence of defendant city. The plaintiff must go beyond showing that such might have been the case.

" 'The rule, in negligence cases, is well stated in *Ramberg* v. *Morgan,* 209 Iowa 474, 486, 487 (218 NW 492):

" ' "True, it was not necessary for plaintiff to prove the causal connection by direct evidence, but substantial evidence must be furnished upon which a reasonable basis for inference may be made. The proof must establish causal connection beyond the point of conjecture. It must show more than a possibility. Verdicts must rest upon reasonable certainty of proof." ' "

It is the opinion of the Court that there was not sufficient evidence upon which a jury verdict could

be based.   Accordingly, the lower court's granting
of judgment notwithstanding the verdict is affirmed
in both cases.   Costs to appellee.

QUINN, P. J., and N. J. KAUFMAN, J., concurred.